LORYN HERRING, A MINOR BY RAYMOND M. MARSHALL, HER GUARDIAN AD LITEM, AND BESSIE HERRING, PLAINTIFFS v. RONALD LINER, DEFENDANT

No. COA03-552

(Filed 6 April 2004)

**Immunity— sovereign—insurance—assistant principal—exception to vehicle usage exclusion**

The trial court did not err in a negligence, negligent supervision, and constructive fraud based on breach of fiduciary duty case by granting defendant assistant principal's motion for summary judgment in a case where a student was hit by a car while crossing the street to get to her new bus stop even though plaintiffs contend defendant waived the defense of sovereign immunity based on an exception to the vehicle usage exclusion in the pertinent insurance policy regarding an insured who is supervising students entering or exiting a school bus, because: (1) defendant had to be actively directing or inspecting students as they were actually entering or exiting school buses in order to waive his sovereign immunity, and general oversight over school buses was not sufficient to waive sovereign immunity; and (2) regardless of whether defendant actually changed the student's bus stop, this conduct did not meet the conduct necessary under the policy's exception to waive sovereign immunity when neither defendant nor a school bus were present at the time the student was crossing the street on the way to her bus stop, defendant did not direct the student to cross the street at the time she was struck, nor did he watch over her while she was crossing the street, and defendant had no immediate or active control over the student as she crossed the street and was struck by the vehicle.

Appeal by plaintiffs from order entered 12 December 2002 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 24 February 2004.

*Harold L. Kennedy, III and Harvey L. Kennedy, for plaintiffs-appellants.*

*Pinto Coates Kyre & Brown, PLLC, by Richard L. Pinto and Martha P. Brown, for defendant-appellee.*

TYSON, Judge.

Loryn Herring ("Loryn"), through her guardian ad litem, and her mother, Bessie Herring ("Herring") (collectively, "plaintiffs"), appeal from an order granting Ronald Liner's ("Liner") motion for summary judgment. We affirm.

## I. Background

On 3 June 1998, plaintiffs sued the Winston-Salem/Forsyth County Board of Education and Liner (collectively, "defendants") for negligence, negligent supervision, and constructive fraud based on breach of fiduciary duty. This Court heard the appeal 30 March 2000 and held that sovereign immunity barred plaintiffs' claims. *Herring v. Winston-Salem/Forsyth County Bd. of Educ.*, 137 N.C. App. 680, 529 S.E.2d 458, *disc. rev. denied*, 352 N.C. 673, 545 S.E.2d 423 (2000). We incorporate the facts from that opinion here and include additional facts necessary for this appeal. *Id.*

On 4 December 2001, plaintiffs moved to set aside the order granting summary judgment in favor of Liner only, based on the discovery of a separate and additional insurance policy that was not before the superior court or this Court when the initial summary judgment motion or appeal was heard. Employers Reinsurance Corporation had issued an insurance policy ("the policy") to the North Carolina Association of Educators under which Liner was an insured at the time of the accident. Plaintiffs' motion to set aside the judgment regarding Liner only was granted on 31 January 2002. Liner filed a new motion for summary judgment on 7 November 2002, which was granted on 9 December 2002. Plaintiffs appeal.

In January 1995, Loryn was eight years old and attended Lewisville Elementary School in the Winston-Salem/Forsyth County School System. Loryn was violently attacked and beaten by three male students who were also riding on the school bus with her. The following morning, Herring went to Loryn's school and complained. She initially spoke with the principal, who directed her to speak with Liner, the assistant principal. Liner refused to expel or suspend the boys suspected in the attack on Loryn. In an affidavit, Herring claimed that Liner wrote and signed a note in her presence that changed Loryn's bus stop. Herring claims that she never requested a change in Loryn's bus stop. Liner claimed, in his affidavit, that Loryn's stop was changed due to Herring's specific request.

To reach the new bus stop, Loryn was required to cross a heavily traveled street. On the morning of 6 June 1995, Loryn was hit by an automobile as she crossed the street on the way to her bus stop. Loryn suffered serious injuries, including permanent brain damage. At the time of Loryn's injury, no school bus was approaching, present, or waiting at the bus stop. Liner was not present at the bus stop.

## II.  Issues

The issues are whether the trial court erred in: (1) construing the policy to deny coverage when an exception to the exclusion existed and (2) granting summary judgment when genuine issues of material fact existed.

## III.  Standard of Review for Summary Judgment

Our standard of review from the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707-08, 582 S.E.2d 343, 345 (2003), (citing *Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. rev. denied*, 354 N.C. 371, 555 S.E.2d 280 (2001)), *aff'd*, 358 N.C. 137, 591 S.E.2d 520 (2004); *see* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

> A defendant may show entitlement to summary judgment by '(1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense.'

*Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)).

" 'Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.' " *Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000)).

### IV. Insurance Policy Coverage

#### A. Sovereign Immunity

Plaintiffs argue that Liner's sovereign immunity is waived by an exception to the exclusion of coverage existing in the policy. We disagree.

Sovereign immunity protects the State and its agents from suit. *Ripellino v. N.C. School Bds. Ass'n*, 158 N.C. App. 423, 427, 581 S.E.2d 88, 91-92 (2003), *cert. denied*, 358 N.C. 156, 592 S.E.2d 694 (2004). A county or city board of education is a governmental agency and its employees are not ordinarily liable in a tort action unless the board has waived its sovereign immunity. *Id.* N.C. Gen. Stat. § 115C-42 (2003) provides the only means by which a board of education may waive its sovereign immunity. *Lucas v. Swain Cty. Bd. of Educ.*, 154 N.C. App. 357, 361, 573 S.E.2d 538, 541 (2002). This statute states,

> [a]ny local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42. The mere purchase of a liability insurance policy by a board of education is insufficient to waive sovereign immunity. *Id.* Immunity is only waived to the extent that the liability insurance policy actually indemnifies the board of education or its employees. *Id.*

Here, under the "vehicle usage" section of the policy insuring Liner, any incidents arising from "[t]he ownership, operation, use, loading or unloading of (a) vehicles of any kind . . . ." by which the insured would normally be liable are excluded from coverage. Liner contends that this exclusion applies here and that sovereign immunity bars plaintiffs' claims.

## B. Exceptions to Exclusions

Plaintiffs argue that the policy specifically carves out an exception to this exclusion and waives Liner's sovereign immunity. The exception states, "an insured who *is supervising students entering or exiting a school bus*" is not excluded from liability despite the "vehicle usage" exclusion cited by Liner. (emphasis supplied).

## C. Construing Insurance Contracts

" '[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto.' " *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000) (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). When we construe provisions of an insurance policy, "the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The language in the policy is to be construed as written "without rewriting the contract or disregarding the express language used." *Fidelity Bankers Life Ins. Co.*, 318 N.C. at 380, 348 S.E.2d at 796 (citing *Industrial Center v. Liability Co.*, 271 N.C. 158, 155 S.E.2d 501 (1967)).

"[E]xclusions from, conditions upon and limitations of undertakings by the [insurance] company, otherwise contained in the policy, are . . . construed strictly . . . to provide coverage." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 522-23 (1970). "[P]rovisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer . . . ." *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) (citing *Trust Co.*, 276 N.C. at 355, 172 S.E.2d at 522-23). "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Gaston County Dyeing Machine Co.*, 351 N.C. at 299, 524 S.E.2d at 563 (quoting *Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777). In determining the ordinary meaning of a word, it is appropriate to look to dictionary definitions. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512, 428 S.E.2d 238, 241 (1993). Our Supreme Court has held that "[u]se of the plain, ordinary meaning of a term is the preferred construction." *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng. Co.*, 326 N.C. 133, 151, 388 S.E.2d 557, 568 (1990) (citing *Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777).

## D. Defining the Terms of the Exception

The determinative issue at bar is the meaning of the exception "is supervising students entering or exiting a school bus." The term "supervising" is not specifically defined in the policy and therefore must be given its ordinary and usual meaning. *Id.* Plaintiffs argue that the definition in *Black's Law Dictionary*, Rev. 4th ed., (1968), which defines one meaning of "supervise" as "to have general oversight over some activity," should be applied. Our Supreme Court has held that in construing the ordinary and plain meaning of disputed terms, " 'standard, nonlegal dictionaries' " should be used as a guide. *C.D. Spangler Constr. Co.*, 326 N.C. at 151, 388 S.E.2d at 568 (quoting *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966)). We have routinely referred to the *American Heritage Dictionary* in determining the ordinary and usual meaning of non-technical words contained in insurance policies. *Id.*; *see Kennedy v. Haywood Cty.*, 158 N.C. App. 526, 529, 581 S.E.2d 119, 121 (2003); *Norton v. SMC Bldg., Inc.*, 156 N.C. App. 564, 569-70, 577 S.E.2d 310, 314 (2003); *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 95, 518 S.E.2d 814, 817 (1999), *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000); *Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 160, 426 S.E.2d 451, 456, *disc. rev. denied*, 333 N.C. 790, 431 S.E.2d 22 (1993).

The *American Heritage Dictionary*, 2nd ed. (1982), defines "supervise" as "[t]o direct and inspect the performance of; superintend." Under this definition, the ordinary meaning of "supervising" is the directing and inspecting of the performance of a particular activity, not the general oversight of that activity as plaintiffs contend. The term "is," the present tense, third-person form of "be," expresses a "continuous action." *Id.* Thus, the entire phrase "is supervising students entering or exiting a school bus," taken as a whole, based upon the ordinary meanings of "is" and "supervise," requires Liner to be *actively* directing or inspecting students as they are *actually* entering or exiting school buses in order to waive his sovereign immunity. *Id.* General oversight over school buses is not sufficient to waive sovereign immunity when analyzing the exception as a whole.

Plaintiffs argue that Liner changed Loryn's bus stop causing the injuries that were sustained when she was struck by a vehicle crossing the street. As assistant principal, Liner was responsible for the discipline of students, including disciplining students for inappropriate conduct on a school bus. Liner denies that his duties included assigning bus stops or changing bus stops. Regardless of whether

**IN RE B.S.D.S.**

[163 N.C. App. 540 (2004)]

Liner actually changed Loryn's bus stop, this conduct does not meet the conduct necessary under the policy's exception to waive sovereign immunity. Neither Liner nor a school bus were present at the time Loryn was crossing the street on the way to her bus stop. He did not direct her to cross the street at the time she was struck nor did he watch over her while she was crossing the street. Liner had no immediate or active control over Loryn as she crossed the street and was struck by the vehicle. At the time of the accident, Loryn's school bus was neither approaching the bus stop, within sight from the bus stop, nor at the bus stop.

Taking plaintiffs' allegations as true, Liner's conduct of merely changing Loryn's assigned bus stop is insufficient to satisfy the language of the exception that he "is supervising students entering or exiting a school bus" in the policy. Liner's actions fail to meet the requirements of the plain meaning of the exception to the vehicle usage exclusion. Plaintiffs' claim is barred by sovereign immunity. In light of our holding, we do not reach plaintiffs' second assignment of error.

### V. Conclusion

Plaintiffs failed to show that Liner's actions were within the policy's exception, "is supervising students entering or exiting a school bus," to waive his sovereign immunity. The judgment of the trial court is affirmed.

Affirmed.

Judges WYNN and McGEE concur.