ALICE McCOY, PLAINTIFF v. JERRY COKER, INDIVIDUALLY AND JERRY COKER D/B/A
JERRY COKER, AND JIMMY L. WADE, INDIVIDUALLY AND IN HIS CAPACITY AS A BUILDING
INSPECTOR FOR THE COUNTY OF WAYNE, THE COUNTY OF WAYNE, THROUGH ITS MAN-
AGER LEE SMITH, DEFENDANTS

No. COA04-1367

(Filed 1 November 2005)

**1. Immunity— governmental—negligent building inspection—accidental—insurance coverage**

An allegedly negligent building inspection was an accident under Wayne County's insurance policy, the policy covered the claim, immunity was waived, and the trial court properly denied the County's motion for summary judgment. Although the inspection and issuance of a certificate of occupancy were intentional, it was neither intended nor expected that plaintiff's property would be rendered uninhabitable and that plaintiff would suffer health problems.

**2. Immunity— governmental—claims against building inspector and county—not duplicative—same immunity**

The trial court did not err by denying a building inspector's motion to dismiss a claim against him in his official capacity where the County was not immune. The public officer holds the same immunity, if any, as the governmental immunity; although the building inspector here contended that claims were duplicative, a plaintiff may bring suit against both a governmental entity and its public officer (with but one recovery).

**3. Immunity— governmental—building inspector—public official**

The trial court should have dismissed a claim against a building inspector in his individual capacity because the inspector was a public official who may not be held personally liable for mere negligence. The inspector's position was created by statute, he exercised a portion of the sovereign power, and his work required discretion.

Appeal by defendants Wade and Wayne County from order denying motions to dismiss and for summary judgment entered 25 August 2004 by Judge Kenneth F. Crow in Wayne County Superior Court. Heard in the Court of Appeals 19 May 2005.

*Morgan, Reeves & Gilchrist, by C. Winston Gilchrist; and Law Offices of Jason Wunsch by Jason Wunsch, for plaintiff-appellee.*

*Sumrell, Sugg, Carmichael, Hicks & Hart, P.A., by Scott C. Hart, for defendant-appellants Wade and Wayne County.*

*Albert D. Kirby, Jr., for defendant-appellant Jerry Coker.*

STEELMAN, Judge.

Plaintiff's residence was damaged by fire on 29 April 1998. Plaintiff hired defendant Jerry Coker (Coker), an unlicensed contractor holding himself out as being licenced, to rebuild and repair her residence for $62,000.00. Coker applied for a building permit from the Wayne County Inspections Department, listing the cost of repair for the residence at $29,000.00, which was just under the $30,000.00 limit requiring licensure. N.C. Gen. Stat. § 87-1 *et. seq* (2004). As Coker proceeded with the repairs, defendant Wayne County (Wayne County) periodically inspected the work. The majority of these inspections were conducted by defendant Jimmy L. Wade (Wade, and together with Wayne County, defendants). On 29 June 1999, Wade conducted a final inspection of the residence and issued a Certificate of Occupancy.

Plaintiff's complaint alleges multiple claims against each of the defendants. As to Coker, it is alleged that he performed faulty work, resulting in "extensive toxic mold growth" at the residence. As to defendants, plaintiff alleges negligence and gross negligence for failure to properly inspect Coker's work, wilful or negligent misrepresentations, and unfair and deceptive trade practices. Wade was sued in both his individual and his official capacity as a building inspector. Plaintiff seeks monetary damages for property damage, personal injuries, exemplary damages, and attorney's fees.

Plaintiff filed this action on 16 March 2004. Defendants filed answer and motions to dismiss on 6 May 2004. These motions sought dismissal of the claims against Wade in both his individual and official capacity. On 20 June 2004, defendants filed a motion for summary judgment based in governmental immunity. On 18 August 2004, the trial court dismissed plaintiff's claims against Wayne County for unfair and deceptive trade practices and denied the defendant's other motions to dismiss and for summary judgment. Defendants appeal. We affirm in part and reverse in part the order of the trial court.

McCOY v. COKER

[174 N.C. App. 311 (2005)]

**[1]** In defendants' second argument they contend that the trial court erred in denying defendant Wayne County's motion for summary judgment based upon governmental immunity. We discuss this argument first because it is partially determinative of another issue. We disagree.

"Summary judgment is properly granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Econo-Travel Motor Hotel Corp. v. Taylor*, 301 N.C. 200, 202, 271 S.E.2d 54, 57 (1980) (citations omitted). "On appeal, our standard of review is (1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law." *NationsBank v. Parker*, 140 N.C. App. 106, 109, 535 S.E.2d 597, 599 (2000) (citation omitted). "The evidence presented is viewed in the light most favorable to the non-movant." *Id.*

"The court is not authorized by Rule 56 to decide an issue of fact. It is authorized to determine whether a genuine issue of fact exists." *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979) (citation omitted). "The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Id.* "Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity." *Evans v. Hous. Auth. of Raleigh*, 359 N.C. 50, 53, 602 S.E.2d 668, 670 (2004). When a county purchases liability insurance, however, it waives governmental immunity to the extent it is covered by that insurance. N.C. Gen. Stat. § 153A-435(a) (2004). In the instant case, defendant County of Wayne purchased an insurance policy (the policy) from St. Paul Fire and Marine Insurance Co. (St. Paul).

The dispositive issue concerns whether that policy covered defendant Wayne County for the acts alleged in plaintiff's complaint. If the policy did provide coverage against the alleged negligent acts of Wayne County's building inspector, then Wayne County has waived its governmental immunity and its motion for summary judgment was properly denied. It is defendants' burden to show that no genuine issue of material fact exists that the policy does *not* cover Wade's

actions in the instant case. *Marlowe v. Piner*, 119 N.C. App. 125, 127-28, 458 S.E.2d 220, 222 (1995).

The policy is comprised of multiple coverage sections, each providing different coverages, limits, and exclusions. Each coverage is self-contained and will be examined separately. Two policy sections are at issue in this appeal, the "Public Entity Management Liability Protection" section [R. pp. 44-51], and the "Public Entity General Liability Protection" section [R. pp. 154-77]. The "Public Entity Management Liability Protection" section includes a section titled **Exclusions—What This Agreement Won't Cover**.

> **Injury or Damage**. We won't cover loss resulting from injury or damage.
>
> *Injury or Damage* means:
>
> - . . . personal injury . . .; or
>
> - property damage.
>
> *Bodily Injury* means any physical harm, including sickness or disease, to the physical health of any person.
>
> *Property Damage* means:
>
> - physical damage to tangible property of others, including all resulting loss of use of that property. . . .

This Court has held that exclusionary provisions such as this prevent recovery under a policy for damages due to negligent building inspection. *Norton v. SMC Bldg.*, 156 N.C. App. 564, 577 S.E.2d 310 (2003); *Kennedy v. Haywood County*, 158 N.C. App. 526, 529-30, 581 S.E.2d 119, 121 (2003). Thus as to the "Public Entity Management Liability Protection" section of the policy, there is no insurance coverage, and consequently no waiver of governmental immunity.

Wayne County also purchased coverage entitled "Public Entity General Liability Protection". The section entitled **What This Agreement Covers** contains the following:

> **Bodily injury and property damage liability.**
>
> We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
>
> - happens while this agreement is in effect; and
>
> - is caused by an event.

*Event* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

We note that the definitions of bodily injury and property damage are substantively identical to the definitions in the "Public Entity Management Liability Protection Coverage" section above, and that there is no dispute that Wayne County is a "protected person" as defined in the policy. We also note that there is an extensive list of exclusions in this section of the policy, including breach of contract and deliberately breaking the law. This section of the policy does not, however, contain any exclusion for injury or damage similar to that contained in the "Public Entity Management Liability Protection" section discussed above. Defendants make no argument that the "Public Entity General Liability Protection" section of the policy does not apply.

If the negligent building inspection of Wade was an accident, then the policy provides coverage for the claims against Wayne County, and it has waived governmental immunity. The policy does not define "accident". "Non-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning." *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 95, 518 S.E.2d 814, 816-17 (1999) (citations omitted), disc. review denied, 351 N.C. 350, 542 S.E.2d 205 (2000). "The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "It is the general rule that where a provision in a policy of insurance is susceptible of two interpretations, when considered in light of the facts in the case, one imposing liability, the other excluding it, the provision will be construed against the insurer." *Roach v. Pyramid Life Ins. Co.*, 248 N.C. 699, 701, 104 S.E.2d 823, 824-25 (1958).

"Policies of liability insurance as well as property and personal injury insurance frequently limit coverage to losses that are caused by 'accident.' In attempting to accommodate the layman's understanding of the term, courts have broadly defined the word to mean an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage. An accident can be either a sudden happening or a slowly evolving process . . . ."

BLACK'S LAW DICTIONARY (8th ed. 2004), quoting John F. Dobbyn, *Insurance Law in a Nutshell* 128 (1996). Under the definition of accident in *Black's* we also find a definition for "culpable accident": "An accident due to negligence." *Id.*

There are cases in North Carolina interpreting policy language similar, but not identical, to the relevant language in the instant case. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 694, 340 S.E.2d 374, 379 (1986); *Washington Hous. Auth. v. North Carolina Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 285, 502 S.E.2d 626, 630 (1998); *Wiggins v. Monroe*, 73 N.C. App. 44, 326 S.E.2d 39 (1985); *Wilmington v. Pigott*, 64 N.C. App. 587, 307 S.E.2d 857 (1983); *Edwards v. Akion*, 52 N.C. App. 688, 691, 279 S.E.2d 894, 896 (1981). In all of the insurance policies in these cases, "event" (termed "occurrence") is defined as " 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*' " *Waste Management*, 315 N.C. at 694, 340 S.E.2d at 379 (emphasis added).

Much of the analysis in these cases focuses on whether the damages incurred were expected or intended by the insured in light of the conduct in question. In making that determination,

> [t]he test should be "a subjective one, from the standpoint of the insured, and not an objective one asking whether the insured 'should have' expected the resulting damage," i.e., whether the resulting damage was unexpected or unintended, not whether the act itself was unintended. An "expected or intended" exclusion applies only "if the resulting injury as well as the act were intentional."

*Washington Hous. Auth.*, 130 N.C. App. at 285, 502 S.E.2d at 630.

The *Washington Hous. Auth.* Court determined that a complaint properly alleged an "accident" under the relevant insurance policy where plaintiff alleged a government authority (Washington Housing Authority) charged with maintaining a low income housing project was negligent in its repair of plumbing leaks, termite control, and maintenance of the property grounds, all resulting in significant damages. In holding that this conduct constituted an "accident" under the policy, this Court reasoned that though Washington Housing Authority's actions were intentional, "the resulting damage to the property occasioned thereby was not." *Id.* at 285-86, 502 S.E.2d at 631. We hold that this reasoning applies in the instant case. Though

defendant Wade's acts inspecting plaintiff's property and issuing a certificate of occupation were intentional, it was neither intended nor expected that as a result of these acts plaintiff's property would be rendered uninhabitable and plaintiff would suffer health problems. *Washington Hous. Auth.*, 130 N.C. App. at 285, 502 S.E.2d at 630.

We note that to the extent the language of the instant policy differs from that of the cited cases (by omitting "which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"), the case for defining "accident" under the policy as covering the instant facts is strengthened, not diminished. Further, even were we to conclude that it is impossible on the facts at bar to determine whether the conduct in the instant case constituted an "accident" under the policy, we would be compelled to hold in favor of coverage. *Wachovia*, 276 N.C. at 354, 172 S.E.2d at 522, *Roach*, 248 N.C. at 701, 104 S.E.2d at 824-25.

We hold that the policy covers the conduct in question, and that Wayne County has waived immunity to the extent of the insurance coverage purchased. The trial court properly denied the motion for summary judgment. This argument is without merit.

[2] In defendants' first argument, they argue that the trial court erred in denying defendant Wade's motion to dismiss. We agree in part.

Defendant Wade moved pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure to dismiss the claims against him in both his official and individual capacity. Defendants first contend that the trial court erred in failing to dismiss the claims against him in his official capacity because they are duplicative of plaintiff's claims against Wayne County. Defendants base their argument on cases such as *Moore v. City of Creedmoor*, 345 N.C. 356, 481 S.E.2d 14 (1997) and *Reid v. Town of Madison*, 137 N.C. App. 168, 527 S.E.2d 87 (2000). Defendants are mistaken in this reliance. These cases simply hold that because "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent[,]' " *Moore*, 345 N.C. at 367, 481 S.E.2d at 21 (citations omitted), the officer holds the same immunity, if any, that the governmental entity holds. Therefore, if the governmental entity is immune from suit, an officer properly acting in his official capacity is immune as well. *Reid*, 137 N.C. App. at 172, 527 S.E.2d at 90. This does not mean that a plaintiff may not bring suit against both the governmental entity and its officer. *Meyer v. Walls*, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997). Of course, judgment against the officer would be recov-

ered from the governmental entity, and plaintiff may have but one recovery. Because we have determined that Wayne County is not immune from suit, we must also hold that Wade is not immune in his official capacity. This argument is without merit.

[3] Defendants next argue that the trial court erred in failing to dismiss plaintiff's claims against Wade in his individual capacity because he was entitled to immunity on those claims.

Whether plaintiff states claims against defendant Wade in his individual capacity sufficient to withstand a Rule 12(b)(6) motion to dismiss hinges on whether defendant Wade was acting as a public official or a public employee. " 'It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto.' 'An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury.' " *Isenhour v. Hutto*, 350 N.C. 601, 609-10, 517 S.E.2d 121, 127 (1999) (citations omitted).

> Our courts have recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. "Discretionary acts are those requiring personal deliberation, decision and judgment." Ministerial duties, on the other hand, are absolute and involve "merely [the] execution of a specific duty arising from fixed and designated facts."

*Id.* at 610, 517 S.E.2d at 127 (internal citations omitted). In *Pigott v. Wilmington*, 50 N.C. App. 401, 404-05, 273 S.E.2d 752, 754-55 (1981), this Court determined that the chief building inspector of the City of Wilmington was a public official, not a public employee, based on the following analysis:

> First, the position of chief building inspector is "created . . . by legislation" which authorizes every city in North Carolina to create a building inspection department, to appoint inspectors and to give the inspectors so appointed titles "generally descriptive of the duties assigned." G.S. 160A-411 (Supp. 1979). Second, the chief building inspector is "required to take an oath of office." Third, the chief building inspector performs "public functions del-

egated to him as part of the sovereign power of the state"; "official trust or responsibility is imposed by law" on him; "the law prescribes and imposes the duties" he must perform; and he is "charged with fixed, public duties" and "empowered to act in the discharge of a duty or legal authority in official life." See G.S. 160A-411 to -438; Fourth, the chief building inspector is "vested with a certain measure of discretion." North Carolina General Statutes, Chapter 160A, part 5 contains numerous provisions which can only be interpreted as placing discretionary powers in the inspectors designated and appropriately entitled by the cities of this State.

In the instant case, Wade is not the chief building inspector, and there is no evidence from which to determine whether he was required to take an oath of office. However, when we apply the test laid out in *Isenhour*, guided by our holding in *Pigott*, we hold that as a building inspector for the County of Wayne, Wade was a public official. His position was created by statute, in that position he exercises a portion of the sovereign power delegated to him, through Wayne County, by statute, and work in his official capacity requires that he exercise discretion.

> The general rule regarding official immunity is: " 'As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, . . . keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability .' " This Court has also held that, while "named defendants may be shielded from liability in their official capacities, they remain personally liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties." To sustain the personal or individual capacity suit, the plaintiff must initially make a *prima facie* showing that the defendant-official's tortious conduct falls within one of the immunity exceptions, *i.e.*, that the official's conduct is malicious, corrupt, or outside the scope of official authority.

*Trantham v. Lane*, 127 N.C. App. 304, 306-07, 488 S.E.2d 625, 627 (1997) (internal citations omitted. Plaintiff's complaint does not allege that defendant Wade's conduct was malicious or corrupt. Paragraph 28 of plaintiff's complaint states: "Wade was performing acts for the County within the course and scope of employment at all times material to this action." We therefore hold that plaintiff's complaint fails to state a claim against defendant Wade in his individual

capacity for which relief may be granted. The trial court erred in failing to dismiss the claim against defendant Wade in his individual capacity pursuant to Rule 12(b)(6), and thus we reverse the order denying defendant Wade's motion to dismiss this claim, and remand to the trial court for entry of an order granting this motion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

Judges TIMMONS-GOODSON and McCULLOUGH concur.